# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

ARLIE C. ADDINGTON and
RENA SUE ADDINGTON,

        Plaintiffs,

v.                                                   Civil Action No. 2:17-CV-104
                                                   (BAILEY)

LOANDEPOT.COM, LLC,

        Defendant.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND TO STATE COURT

Pending before this Court is the plaintiffs' Motion to Remand to State Court [Doc. 8], filed September 6, 2017. For the reasons that follow, the motion is **GRANTED**.

## I. BACKGROUND

This case was originally filed in the Circuit Court of Webster County, West Virginia, on June 30, 2017 [Doc. 1-1]. In the Complaint [Doc. 1-1], the plaintiffs allege that their loan provider, defendant LoanDepot.com, LLC, breached the deed of trust agreement between the parties by violating certain Federal Housing Administration ("FHA") regulations incorporated into the terms of the agreement and engaged in illegal and abusive practices in servicing the loan, causing the plaintiffs to suffer stress, anxiety, and fear of losing their home [Doc. 1-1, pp. 5-7]. The Complaint alleges that the defendant intended to foreclose on the plaintiffs' home on July 12, 2017 [Doc. 1-1, ¶ 20].

The Complaint sets forth four counts: (1) breach of contract; (2)

1

misrepresentations/unconscionable conduct, in violation of W.Va. Code §§ 46A-2-127, 128; (3) illegal late fees, in violation of W.Va. Code § 46A-3-112; and (4) illegal fees, in violation of W.Va. Code §§ 46A-2-127(g), 128(c). Specifically, the Complaint alleges that the defendant breached the parties' deed of trust by proceeding with foreclosure without providing the plaintiffs with foreclosure alternatives, assessing unpermitted late fees, failing to conduct a face-to-face interview with the plaintiffs as required by 24 C.F.R. § 203.604, failing to consider the plaintiffs for a modification pursuant to the FHA Home Affordable Modification Program ("HAMP"), failing to consider specific loss mitigation options before foreclosure, and otherwise failing to offer the plaintiffs any foreclosure alternatives before initiating foreclosure. As relief for the alleged breaches, the plaintiffs request a declaration that the defendant breached the contract as alleged, actual and punitive damages, attorneys fees and costs, and "[s]uch other relief as the Court deems equitable and just." [Doc. 1-1, ¶¶ 21-27].

As to the second count, the plaintiffs allege that the defendant engaged in debt or information collection practices that violated W.Va. Code § 46A-2-127, and that the defendant used unfair or unconscionable means to collect a debt in violation of W.Va. Code § 46A-2-128 [Doc. 1-1, ¶¶ 28-30]. As to the third count, the plaintiffs allege that the defendant improperly assessed late fees, charged late fees that were not due on at least fifteen occasions, and routinely engaged in "pyramiding" late fees in violation of W.Va. Code § 46A-3-112 [Doc. 1-1, ¶¶ 31-33]. As to the fourth count, the plaintiffs allege that the defendant routinely assessed illegal fees while attempting to collect on the loan [Doc. 1-1, ¶¶ 34-35]. As relief for each count, the plaintiffs request actual damages, attorneys fees and costs, and civil penalties for each violation under W.Va. Code §§ 46A-5-101(1) and

106. It is not clear from the face of the complaint precisely how many violations the plaintiff alleges in each count.

On August 8, 2017, the defendant removed this case to this Court asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332 [Doc. 1]. Shortly thereafter, the defendant filed a Motion to Dismiss for Failure to State a Claim [Doc. 2]. On September 6, 2017, the plaintiffs filed the instant Motion to Remand to State Court [Doc. 8]. Both motions have been fully briefed and are ripe for disposition, however this Court may not address the motion to dismiss unless it determines that it has subject-matter jurisdiction over this action. For the reasons explained below, it does not, and this Court need not address the defendant's Motion to Dismiss.

## II. APPLICABLE LAW

"We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." ***Strawn v. AT&T Mobility***, 530 F.3d 293, 296 (4th Cir. 2008) (citations omitted).

Federal courts "are obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns implicated' . . . [t]herefore, 'if federal jurisdiction is doubtful,

3

a remand to state court is necessary.'" ***Md. Stadium Auth. v. Ellerbe Becket Inc.***, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted); see also *Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.").

Defendants seeking removal bear the burden of demonstrating that jurisdiction is proper. See ***Strawn***, 530 F.3d at 296–97; ***Mulcahey v. Columbia Organic Chems. Co.***, 29 F.3d 148, 151 (4th Cir. 1994). "While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction with a short plain statement—just as federal jurisdiction is pleaded in a complaint—when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper." ***Strawn***, 530 F.3d at 297 (citing ***Ellenburg v. Spartan Motors Chassis, Inc.***, 519 F.3d 192, 200 (4th Cir. 2008)); see also ***Dart Cherokee Basin Operating Co. v. Owens***, 135 S.Ct. 547, 554 (2014) (when challenged, defendant must show that removal is proper by preponderance of the evidence).

"The question then becomes how that burden is to be satisfied. Generally, the amount specified in the complaint will determine whether the jurisdictional amount is satisfied for the purposes of removal." ***Bartnikowski v. NVR, Inc.***, 307 F. App'x 730, 734 (4th Cir. 2009) (citations omitted). "Determining the amount in controversy becomes more difficult, however, where, as here, Plaintiffs have left damages unspecified in their complaint." *Id.* In West Virginia, it is not required that the Complaint's *ad damnum* clause

4

state a specific dollar amount. In such circumstances, the Court may consider the entire record before it and may conduct its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum. *Mullins v. Harry's Mobile Homes*, 861 F.Supp. 22, 23 (S.D. W.Va. 1994) (Faber, J.). In so doing, the Court is not required "to leave its common sense behind." *Id.* at 24.

Because the amount in controversy is measured by "the pecuniary result to either party which [the] judgment would produce" when declaratory judgment is sought, *Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964), it is crucial to determine precisely what relief the plaintiff seeks. In an action seeking declaratory judgment, however, the amount in controversy only includes the object *actually* at issue, not the future impact or goal of the litigation. *Lanham Ford, Inc. v. Ford Motor Co.*, 101 F. App'x 381, 382 (4th Cir. 2004) (per curiam) (emphasis added).

Pursuant to § 1332, diversity must be complete "such that the state of citizenship of each plaintiff must be different from that of each defendant." *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). Further, for purposes of diversity, the citizenship of a limited liability company is determined by the citizenship of its members. *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004).

### III. ANALYSIS

The crux of the plaintiffs' Motion to Remand hinges upon the amount in controversy. However, this Court would be remiss to ignore the requirement of complete diversity. As such, this Court will first address the amount in controversy requirement, and then discuss the citizenship of the parties below.

A. Amount in Controversy

Here, the plaintiffs have filed a motion to remand challenging subject-matter jurisdiction, on the grounds that the amount in controversy is not met. Because this case is before this Court on removal and because the plaintiffs' Complaint does not state a specific amount of damages requested, the defendant is required to demonstrate, by a preponderance of the evidence, that the amount in controversy requirement is met. The defendant argues that the amount in controversy well exceeds $75,000.00 because the plaintiffs seek specific performance of terms of the loan agreement, that this request is effectively a veiled request for injunctive relief against foreclosure, and thus the amount in controversy is the balance of the loan at the time of removal, $136,291.11 [Doc. 13, p. 3].

The plaintiffs seek a declaration that the defendant breached the deed of trust agreement by failing to comply with various FHA regulations, including the failure to conduct a face-to-face meeting. The plaintiffs appear to argue that the value of the relief sought in this case is the value to the plaintiffs, or the detriment to the defendant, of the rights challenged. The defendant argues that the value of the relief sought is the entirety of the loan because a declaration of breach in this case could ultimately prevent it from ever foreclosing on the home.

As an initial matter, the defendant misstates the relief sought—the defendant states that the plaintiffs seek specific performance, but at no point in the plaintiffs' Complaint is such relief requested. The defendant appears to point to the first paragraph of the plaintiffs' Complaint, which states that the "Plaintiffs bring this action to stop the foreclosure sale and save their home," and a standard prayer for relief as grounds to show that the plaintiffs are actually seeking an injunction against foreclosure. While the quoted portion

would be well-placed in a complaint seeking an injunction against foreclosure, reading the Complaint in its entirety, the plaintiffs do not request such relief. The plaintiffs state that "Plaintiffs do not seek specific performance or an injunction preventing foreclosure." [Doc. 18, p. 1]; *Mullins*, 861 F.Supp. at 23 (court may consider the record as a whole where the complaint does not specify an amount).

Further, while the plaintiffs do request "[s]uch other relief as the Court deems equitable and just," this Court "simply will not rely on a standard pleading device—to request any additional relief the court deems appropriate—as a veiled request for an injunction. Construing Plaintiff's complaint in such a manner would violate the long-established principle that a Plaintiff may tailor the remedy he seeks to avoid federal court jurisdiction." *Besse v. General Motors Corp.*, 317 F.Supp.2d 646, 651 (D.S.C. 2004) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)); *see also Pirillo v. PNC Mortg. Corp.*, 2012 WL 761607 (N.D. W.Va. 2012). The defendant cannot meet its burden by relying on relief that the plaintiffs have not sought.

The defendant in this case seeks to construe the object of the litigation far more broadly than previous courts—the object of litigation in a declaratory judgment action only includes the object *actually at issue*, not the "ultimate strategic goal" of litigation. *Lanham*, 101 F. App'x at 383; *see also Healy*, 292 U.S. at 267 ("[T]he collateral effect of the decree, by virtue of *stare decisis*, upon other and distinct controversies, may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law."); *Panhandle Farmers Mut. Ins. Co. v. Ridge Crest Props., LLC*, 2013 WL 4039948, at *2 (N.D. W.Va. 2013) (Stamp, J.); *Lee v. Citimortgage, Inc.*,

7

739 F.Supp.2d 940, 946 (E.D. Va. 2010).

In *Lanham*, the plaintiff did not receive a full and fair hearing to challenge the termination of his franchise dealership and believed that he was entitled to such a hearing under the terms of his Dealer Agreement. *Lanham*, 101 F. App'x at 381. Lanham brought suit seeking a declaration that he was entitled to such a hearing with rights of full discovery, and a temporary injunction on the termination of his franchise until the completion of the hearing. *Id.* at 382. After the defendant removed the case to federal court, Lanham sought remand, challenging the amount in controversy. The district court denied remand, finding that the object of the litigation was the dealership itself. On appeal, the Fourth Circuit, in a per curiam opinion, determined that the district court erred in this conclusion, and stated:

> Though it is doubtless true that Lanham's *ultimate strategic goal* is to retain the dealership and the Ford Motor franchise, the *object of the present litigation* is narrower than this goal. In the present litigation, Lanham seeks only a new hearing before the Policy Board, with rights of full discovery, and an injunction against termination of the franchise pending completion of this new hearing. This requested relief, and not the dealership itself, constitutes the object of the present litigation.

*Id.* (emphasis added).

The Court concluded that the district court's decision was still proper on alternative grounds, because the value of the new hearing exceeded $75,000.00. *Id.* The Court defined "the value of this requested relief [as] the sum of (i) the value to Lanham of the right to operate its Ford franchise until completion of a new hearing, and (ii) the value to Lanham of the hearing itself, which is roughly equivalent to Lanham's success at retaining its franchise by going though this hearing, multiplied by the value of Lanham's franchise

8

as a going business concern." *Id.*

Even if this Court were to conclude that the plaintiffs seek injunctive relief, it is not clear that the full balance of the loan would be the appropriate measure of the amount in controversy. As the court noted in *Bohigian v. Flagstar Bank, FSB*, 2012 WL 112322 (N.D. W.Va. 2012) (Keeley, J.), "even if . . . [the plaintiff] were seeking a permanent injunction on the foreclosure of her home, the Court is unconvinced that such an injunction would cost [the defendant] the full balance of the loan," because the defendant did not allege that the foreclosure is the only way that the defendant can recover on the loan because the plaintiff's personal liability was disclosed in bankruptcy. Although the defendant has provided proof of the loan balance, unlike the defendant in *Bohigian*, it has not demonstrated beyond mere speculation "how the 'pecuniary result' it would suffer upon such an injunction would equate to the entire balance of the loan." *Id.* at *3.

In cases where the court found that the full balance of the loan was the amount in controversy, the common thread was that foreclosure was the defendant's only avenue to collect on the debt. *See, e.g., Hudak v. Selene Finance LP*, 2015 WL 1539740 (N.D. W.Va. 2015) (Keeley, J.) (plaintiffs' personal liability discharged in bankruptcy); *Winnell v. HSBC Mortg. Servs., Inc.*, 2011 WL 5118805 (S.D. W.Va. 2011) (Goodwin, J.) (plaintiff had discharged personal liability in bankruptcy); *see also Carter v. Nat'l City Mortg., Inc.*, 2014 WL 2862953, at *3 (N.D. W.Va. 2014) (Keeley, J.) (finding loan balance was amount in controversy in context of temporary injunction where plaintiff had not discharged liability in bankruptcy, no stipulation limiting damages, and the record established the loan amount). In *Winnell*, as in *Hudak*, the plaintiff had discharged his personal liability in

9

bankruptcy, and thus the court found that the amount in controversy was met because "foreclosure is defendant's sole recourse to enforce the loan . . . [i]f [defendant] is unable to enforce the loan, it stands to lose at least the outstanding balance of the loan." *Winnell*, 2011 WL 5118805, at *5.

Neither party appears to dispute that the plaintiffs remain personally liable on the debt—here, the defendant has not shown or alleged that the plaintiffs discharged their debt, or that even if injunctive relief were sought, that foreclosure is the only recourse by which the loan balance could be recovered. The defendant simply asserts that "Plaintiffs ask for a declaration that the deed of trust and loan agreement were breached—equitable relief that *likely would preclude* LoanDepot from foreclosing on the loan in the future." [Doc. 13, p. 7]. This kind of unsupported speculation is insufficient to support removal. *See, e.g.*, *Bertrand v. Gastar Expl., Inc.*, 2015 WL 1280968, at *3 (N.D. W.Va. 2015) (Stamp, J.) ("the amount in controversy requirement cannot be based on speculation or 'what ifs' that may occur."); *Kelford v. Bank of America*, 2011 WL 5593790, *3 (N.D. W.Va. 2011) (Stamp, J.); *Pirillo*, 2012 WL 761607, at *3.

The plaintiffs may even ultimately wish to prevent their home from being foreclosed upon, but the object *actually at issue in this litigation* relates to the parties' rights and obligations under the FHA regulations incorporated into the contract. *Lanham*, 101 F. App'x at 383. Neither party has provided monetary figures by which they value these rights, nor is the value clear from the record. While the plaintiffs may be couching their prayers for relief in an ambiguous or amorphous manner, that is not a ground upon which this Court can create or infer subject-matter jurisdiction. Indeed, it is a "long-established

principle that a Plaintiff may tailor the remedy he seeks to avoid federal court jurisdiction." *Besse*, 317 F.Supp.2d at 651 (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 294).

Accordingly, the defendant has failed to meet its burden of establishing by a preponderance of the evidence that the amount in controversy requirement is met in this case.

B. Diversity of Citizenship

While the parties focus their arguments solely upon the amount in controversy, it is not clear that the parties are completely diverse. This Court notes that the plaintiffs are West Virginia citizens, but that the citizenship of the defendant is unclear. In the Notice of Removal [Doc. 1], the defendant provides its principal place of business and state of incorporation as proof of citizenship. However, the named defendant appears to be a limited liability company and not a corporation, and as such the citizenship of the LLC's members is the relevant inquiry. As this Court explains below, it may not infer the citizenship of the LLC's members to create complete diversity and thus does not have subject-matter jurisdiction over this action.

The Notice of Removal states that: "LoanDepot is a corporation incorporated in the State of Delaware, with its principal place of business in Foothill Ranch, California. LoanDepot is, therefore, a citizen of Delaware and California for the purposes of 28 U.S.C. §§ 1332 and 1441." [Doc. 1, ¶ 6]. To the contrary, the defendant's Corporate Disclosure Statement states that: "LoanDepot.com, LLC is a privately owned limited liability company. There is no parent corporation or publicly held corporation owning ten percent or more of LoanDepot.com, LLC's membership interest." [Doc. 4]. As the defendant's name suggests, it is a limited liability company. Therefore, because LoanDepot "is a limited

11

liability company rather than a corporation . . . its citizenship for purposes of diversity jurisdiction turns not on its place of formation or principal place of business, but on the citizenship" of its members. *Travelers Indem. Co. v. Portal Healthcare Sols., LLC*, 644 F. App'x 245, 246 (4th Cir. 2016).

The defendant's Notice of Removal does not state the citizenship of the members of LoanDepot.com, LLC, and the record as a whole is devoid of any reference to the members of the LLC. Where "federal jurisdiction is doubtful, a remand to state court is necessary." *Md. Stadium Auth.*, 407 F.3d at 260 (quoting *Mulcahey*, 29 F.3d at 151). The defendant has failed to establish the requisite diversity, and accordingly, this Court must remand this action.

C. Attorney's Fees and Costs

The plaintiffs also request that they be awarded attorney's fees and costs in connection with the motion to remand. An "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). This is limited, however, as "absent unusual circumstances, courts may award attorneys fees under the attorney fee provision of the removal statute only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005). This Court finds that awarding such fees and costs in this case would be inappropriate, as the defendant did not wholly lack an objectively reasonable ground for removal. Accordingly, the plaintiffs' request for attorney's fees and costs should be denied.

## IV. CONCLUSION

For the aforementioned reasons, this Court hereby **GRANTS** the Plaintiffs' Motion to Remand to State Court **[Doc. 8]**, **DENIES** the plaintiffs' request for attorney's fees and costs, and **DENIES** the defendant's Motion to Dismiss for Failure to State a Claim **[Doc. 2]** as moot. Accordingly, this action is hereby **REMANDED** to the Circuit Court of Webster County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein and to the Clerk of the Circuit Court of Webster County, West Virginia.

**DATED:** October 18, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE